**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 20-45-DLB-EBA**

**SUE ANN CLARKE,**
**as Trustee of the Sue Ann Clarke**
**2012 Spousal GST Trust** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**WESTERN MASON WATER DISTRICT, et al.** **DEFENDANTS**

*** *** *** ***

This matter is before the Court upon Plaintiff Sue Ann Clarke's Motion for Summary Judgment. (Doc. # 44). Defendants Western Mason Sanitation District (the "Sanitation District") and Western Mason Water District (the "Water District") filed a Response and Clarke filed her Reply. (Docs. # 45 and 46). The Motion is now ripe for review. For the reasons stated herein, Clarke's Motion for Summary Judgment (Doc. # 44) is **denied**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 2014, Sue Ann Clarke and her husband Timothy Clarke, joint owners of several plats of property in trust, granted water and sewer line easements to the local water and sanitation districts for the widening of the Ky 9-AA highway in western Mason County, Kentucky. (Docs. # 1 ¶¶ 9-10 and # 45 at 2-3). The Districts contracted with HMB Engineering, LLC ("HMB") to conduct this work, including engineering and securing the necessary easements. (*See* Doc. # 45 at 2-4). As part of the negotiations, the Clarkes secured an agreement with the Transportation Cabinet, which was managing the project, that in partial exchange for the easement, the Cabinet would build several paved entrance

spurs onto the Clarke properties adjoining Highway 9, to ensure they retained access to their property after the highway was widened. (Docs. # 1 ¶ 13 and # 45 at 3).

The Cabinet paved the spurs before the Districts began the project of relocating the water and sewer lines into the newly-acquired 2014 easements. (*See* Doc. # 45 at 3). Realizing this, HMB notified the Districts that its engineering plans did not account for the spurs having been already constructed and that they did not think it best to lay the lines under the already-constructed spurs. (*Id*. at 3-4). HMB and the Districts agreed that it would be best for their own convenience and the Clarkes' future access if the lines were laid around the end of the spurs, and not underneath them. (*Id*.). HMB also noted that water pressure to the Clarke properties would be compromised if the lines were relocated as originally planned and they therefore needed to be laid outside the 2014 easements. (*Id*. at 4). HMB agreed to draft the necessary expanded easements and present them to the Clarkes for signature. (*Id*.).

The parties strongly disagree on what happened next. The Districts assert that they discussed the issue with Timothy Clarke and "came up with a solution" verbally (*id*. at 4) and imply that the easements may have been signed and the signatures whited out at a later date. (*Id*.; 45-5 at 3). For her part, Sue Ann Clarke asserts that she never signed the new expanded easements and that her husband Timothy never gave oral permission to modify the 2014 easement. (Doc. # 46 at 4-5).

Signed or not, the Districts proceeded to relocate the water and sewer lines according to the engineering plan created by HMB. (Doc. # 1 ¶¶ 15-16). Clarke identifies four separate deviations from the 2014 easements, which include two water line deviations located near stations 155+00 and 207+50 of the HMB engineering drawings,

and two sewer line deviations located near stations 186+00 and 207+50. (Doc. # 44 at 2-8). All instances appear to result from the Districts either straightening some angles in the lines or digging around the paved commercial entrance spurs instead of underneath them. (*See id.*). The Districts completed work in the fall of 2016. (Doc. # 45 at 4).

Three years later, in 2019, Timothy Clarke approached the Districts asking them to encase some of the relocated lines. (*Id.* at 4-5). During the discussions, he mentioned that some of the lines were laid outside the 2014 easements. (*Id.*). No action was taken.

On March 30, 2020, Sue Ann Clarke filed this reverse condemnation action against the Districts, seeking, in the alternate, monetary damages or an injunction from this court ordering the Districts to move the lines within the 2014 easements. (*See* Doc. # 1). She amended her complaint in August 2021. (*See* Doc. # 33). During discovery and settlement negotiations she clarified that she was seeking an injunction, not damages, thereby electing her remedy as required by Kentucky law. (Doc. # 46 at 2). She then filed a Motion for Summary Judgment, arguing that because the Districts admitted during discovery that the lines deviated from the 2014 easements at the locations in question, she is entitled to judgment in her favor. (*See generally* Doc. # 44). The Districts counter with three main defenses: (1) that Clarke is limited to money damages in a reverse condemnation action, (2) that she hasn't alleged damages sufficiently to win summary judgment, and (3) that she and her husband acquiesced to the trespass by assenting to the modification and by waiting to file this action. (Doc. # 45). Clarke replies that the Districts misapprehend the law of reverse condemnation and she is entitled to an injunction, that she and her husband never acquiesced to the relocation of the lines outside the 2014 easement, and that she did not unreasonably delay. (Doc. # 46).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587. Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### B. The Motion for Summary Judgment

Clarke's Motion for Summary Judgment is very straightforward: she describes the original 2014 easements, indicates four locations where the Districts laid their lines outside the easements, and then points to the Districts' admission of these facts in their answers to her interrogatories. (Doc. # 44 at 14). As Clarke tells it, the Districts admitted that the water and sewer lines depicted in her Complaint were constructed outside the 2014 easements. (*See id.* at 3-10). Ergo, this case is over and she is entitled to judgment.

She is correct that the Districts admitted to laying water and sewer lines outside of their easements, but as is often the case, there is more to the story. In both their

responses to interrogatories (Docs. # 44-4 and 44-5) and their Response to Clarke's Motion for Summary Judgment, the Districts lay out a number of defenses: that Clarke is limited to money damages in this type of suit, that she consented to the deviation from the 2014 easements, and that she slept on her rights. (*See generally* Doc. # 45). If correct, these arguments would preclude summary judgment in Clarke's favor.

**1. Proof of Damages & Availability of Remedies**

The Districts argue that Clarke is limited to monetary damages in a reverse condemnation case and therefore has not proven damages to the degree required by the summary judgment standard. (Doc. # 45 at 9-11). Clarke argues that the Districts are ignoring contrary Kentucky case law: that both injunctive relief and damages are available remedies in a reverse condemnation case. (Doc. # 46 at 5-7). Because she is seeking an injunction, not money damages, and damages need not be pled as particularly when requesting an injunction, she argues the summary judgment standard is satisfied. (*Id.*).

The caselaw governing what remedies are available in a reverse condemnation action is admittedly highly convoluted. The Districts believe that reverse condemnation cases allow only one remedy: money damages. Clarke does indeed style her complaint as a reverse condemnation suit. (*See* Doc. # 1 ¶¶19-26). And the reverse condemnation statute says nothing about an injunction as remedy, instead requiring that "there shall be awarded to the landowners as compensation such a sum as will fairly represent the difference between the fair market value of the entire tract . . . immediately before the taking and the fair market value of the remainder thereof immediately after the taking." *See* Ky. Rev. Stat. § 416.660. Yet the Kentucky Court of Appeals, then Kentucky's highest Court, stated that a "land owner has the option to either seek injunctive relief or

to recover damages for the permanent taking of his property." *Keck v. Hafley*, 237 S.W.2d 527, 529-30 (Ky. 1951). The parties' arguments vaguely identify an inconsistency in Kentucky law. Upon review of the cases, it appears that what began as two separate remedies derived from multiple separate causes of action has now been judicially joined into two remedies available for one cause of action—that of reverse condemnation. As will be described below, the Kentucky Court of Appeals ruled on the initial issue in *Keck*, and subsequent decisions have expanded that holding. In the absence of any guidance from the Kentucky Supreme Court as to this interpretation of *Keck*, this Court must take Kentucky law as it finds it.

The right of the people to bring reverse condemnation actions against the Commonwealth stems from Sections 13 and 242 of the Kentucky Constitution. *See Keck*, 237 S.W.2d at 529. Both Sections require the government to compensate individual landowners for any "taking" of their property, similar to the Fifth Amendment of the United States Constitution. *See* U.S. Const. amend. V. Section 13 of the Kentucky Constitution states that "[no] man's property [shall] be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." Ky. Const. § 13. Section 242 is much longer and broader, and applies to municipal and other corporations, such as the Districts here:

> *Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them;* which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. The General Assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual made by Commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law.

Ky. Const. § 242 (emphasis added). Neither Section mentions any remedy other than the payment of damages in the form of the fair market value of the property taken. There are earlier cases that involve injunctions, but they do not appear to sound in reverse condemnation or the Kentucky Constitution, as *Keck* itself acknowledged. *See Keck*, 237 S.W.2d at 529 ("[T]his Court has recognized the right of a property owner to enjoin agents of the State from injuring or destroying his land."). The cases cited by that court for the proposition were brought under trespass or tort theories, not reverse condemnation.

The presumption in reverse condemnation cases was that the government or entity involved had the right to maintain the condition complained of after damages were paid. It is implicit in the name of the cause of action, which is brought when the entry by the government onto the plaintiff's land occurs before the condemnation action is brought. Ky. L. of Damages § 17:19 (2011). "The obligation to pay is viewed by the courts as an implied promise by the government to pay." *Id.* Therefore, once the government pays, the land is theirs and the condition may remain.

Kentucky's highest court addressed this issue in *Kentucky Game & Fish Commission v. Burnette*, when it stated that "the right to continue to maintain the conditions produced (and of which complaint is made) would be obtained by the defendant as a property right, for which full compensation had been made."[1] *Burnette*, 163 S.W.2d 50, 52 (Ky. 1942). Thus, when *Keck v. Hafley* was decided, an aggrieved landowner had two possible actions: sue the state for an injunction under trespass or tort theories for damage to her land, or seek damages under a reverse condemnation theory

[1] This is likely why Clarke has opted to pursue an injunction instead of damages; if she sought damages, the lines would remain where they are, the land they lie under effectively granted to the Districts by easement.

and cede the disputed property to the government.

The *Keck* court faced a complaint that requested two forms of relief. Hafley, the landowner, complained that the Commonwealth constructed a highway and drainage system in such a way that his land was flooded and damaged during normal rainfall. *Keck*, 237 S.W.2d at 528-29. He sued, seeking damages for the harm already done and an injunction requiring the Commonwealth to fix the road and drainage system. *Id.* On appeal, the Court of Appeals described the theory of reverse condemnation as this Court has above. *See id.* at 529. Sections 13 and 242 of the Kentucky Constitution require the payment of damages when the state takes land without paying for it. *Id*. If the state takes land and the plaintiff is successful in his reverse condemnation proceeding, then the state pays the fair value as determined by a jury and takes possession of the land, with all the rights that come with it. *Id.*; *see Burnette*, 163 S.W.2d at 52.

However, the *Keck* court acknowledged that a landowner also has the "right . . . to enjoin agents of the State from injuring or destroying his land" under other theories. *Keck*, 237 S.W.2d at 529. The landowner attempted to get both remedies from the court, but this was impossible, as they are contradictory. As *Burnette* stated, if the Commonwealth pays damages, it gets to keep the land and the condition complained of. *Burnette*, 163 S.W.2d at 52. But if the plaintiff secures an injunction, then the Commonwealth must rectify the condition. *Keck*, 237 S.W.2d at 529-30. Because of this logical impossibility, the court stated that "the land owner has the option to either seek injunctive relief or to recover damages for the permanent taking of his property. He is not entitled to both remedies because a judgment granting such double relief would be inconsistent." *Id.* at 529-30.

This is all *Keck* says. It simply acknowledges the reality that a plaintiff landowner has several avenues of attack to initially use against the Commonwealth, but must ultimately elect one. Technically, *Keck* did not say that Sections 13 or 242 of the Kentucky Constitution provide for injunctions as a remedy in reverse condemnation actions, nor did it modify the reverse condemnation statute on the topic. *See* Ky. Rev. Stat. § 416.660. But attorneys and subsequent courts have read it to do exactly that.

Clarke points this Court to an unpublished 2018 Kentucky Court of Appeals decision which states unequivocally that "[a] plaintiff in a reverse condemnation action may, instead of opting to receive damages, ask for equitable or injunctive relief, including the recovery of the property at issue." *Huber v. Green Cnty. Fiscal Ct*., No. 2017-CA-759-MR, 2018 WL 3954736, at *3 (Ky. Ct. App. Aug. 17, 2018). The Court of Appeals came to the same decision five years earlier in *Cary v. Pulaski County Fiscal Court*, a published decision. In that case, the court stated that "a plaintiff in a reverse condemnation action may instead ask for equitable or injunctive relief, including the recovery of the property at issue." *Cary v. Pulaski Cnty. Fiscal Ct*., 420 S.W.3d 500, 517 (2013). *Keck* stated the logical fact that the plaintiff must elect her remedies. *Cary* and *Huber* extended it to mean that both remedies are available in one cause of action.[2]

In the end, *Keck* is distinguishable by itself, but not when *Cary* and *Huber* are layered on top. The implication of both cases taken together is clear: under Kentucky

---

2 The Districts claim that *Clemmer v. Rowan Water* stands for the proposition that in a reverse condemnation action, "any recovery beyond the value of the property taken" is precluded. (Doc. # 45 at 10). But the Districts' argument misreads *Clemmer*, which simply holds that reverse condemnation is an exclusive action which cannot be brought alongside other theories. *Clemmer v. Rowan Water, Inc.,* No. 0:04-CV-165-HRW, 2006 WL 449266, at *3-4 (E.D. Ky. Feb. 23, 2006). This is consistent with *Burnette*, *Keck*, *Cary*, and *Huber*, which all require Clarke to elect her remedies.

reverse condemnation law, both injunctions and damages are viable—yet alternative—grounds for relief. *See Huber*, 2018 WL 3954736, at *3. *Keck* says that the two remedies are inconsistent because *Burnette* and its progeny allow the government to keep the land and conditions if damages are paid, but an injunction would require them to remedy it. *Keck*, 237 S.W.2d at 529-30. *Cary* and *Huber* went a step further and said that reverse condemnation therefore allows for two remedies. *Huber*, 2016 WL 3954736 at *3.

Federal courts "must proceed with caution when making pronouncements about state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (quotations omitted) (quoting *Lexington Ins. Co., v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)). It is not for this court to evaluate policy, opine on various theories, or adopt its own interpretation of state law. *Id.* "This Court's proper reluctance to speculate on any trends of state law applies with special force to a plaintiff in a diversity case, like this one, who has chosen to litigate [her] state law claim in federal court." *Id*. In the absence of case law to the contrary, the Court concludes that Kentucky's constitutional requirement that just compensation be given now includes the right to seek an injunction. Thus, an injunction is an available remedy in a reverse condemnation action and Clarke has adequately pled damages in her Motion.

Because an injunctions and money damages are available remedies in a reverse condemnation action, Clarke has the right to seek an injunction. However, she must elect one of the remedies, which she has done.

**2. Timeliness**

The Districts also assert that Clarke may not seek an injunction because she knew of the easement violations sometime shortly after the lines were constructed in 2016 and

then waited for four years to sue. (Doc. # 45 at 13-14). As authority for this assertion, they cite *City of Whitesburg v. Lewis*. 72 S.W.2d 1019 (Ky. 1934). Clarke counters that the Districts are adding restrictions on the right that are not warranted by the case law, and that *Whitesburg* only stands for the proposition that ignoring an obvious taking by the government and sleeping on your rights for over five years acts to limit the relief available. (Doc. # 46 at 8-9). Clarke's second point is correct.

A landowner may be limited in her available remedies if she acquiesces to the taking itself, but no inaction can revoke the constitutional right to just compensation. As discussed above, a reverse condemnation action is viewed by the courts as an action on an implied contract, or promise to pay. *Id*.; *see also* Ky. L. of Damages § 17:19 (2011). Because of this conception, Ky. Rev. Stat. § 413.120(1) applies to establish a statute of limitations of five years. *Id*.; *see also Jones v. Commonwealth*, 875 S.W.2d 892, 893 (Ky. Ct. App. 1993). In *Cary*, the Court of Appeals addressed a case where a landowner observed the county's workers make improvements on the private road he owned in front of his house. *Cary*, 420 S.W.3d at 518. Cary observed the workers remove his stone wall, regrade the road, install drainage tiles, and create ditches on either side and even served them sandwiches while they did it. *Id*. A few years later they re-sealed the roadway. *Id*. Yet he never hired an attorney or contested the taking until over five years later. *Id*. The Court of Appeals concluded that while he was entitled to just compensation under the Kentucky Constitution, he was not entitled to an injunction because he did not contest the taking as it was happening. *Id.* at 517-18. By inaction they had limited themselves to compensation and lost the right to stop it outright. *Id.* at 518-19.

*Whitesburg* dealt with a similar set of facts. A local landowner allowed the government to tear down a stone wall in front of his house and take a small portion of road frontage for a road project. *Whitesburg*, 72 S.W.2d at 1019. He objected but "stated that he would not enjoin." *Id*. At least three years later he filed suit to determine the question of who owned the frontage property taken. *Id*. The Kentucky Court of Appeals held that,

> [W]here, as here, the land is taken for street purposes, and money for its improvement is expended, and no action is taken by the owner to prevent the taking or improvement, we conclude that the owner is not entitled to recover the property, but that an action for damages is his sole remedy.

*Id*. at 1019. The Districts interpret this to mean that damages are the only remedy when land is taken for public purposes. (Doc. # 45 at 13). Clarke argues that that is only true when the land is taken "for street purposes," which the Court finds to be far too narrow a reading. (Doc. # 46 at 10). But she also argues that *Whitesburg* is a case about failure to object when the taking is known. (*Id*. at 9-10).

In light of *Cary*, Clarke is correct. *Cary* cited *Whitesburg* for the proposition that failing to act within a reasonable time of when the taking becomes known forfeits any right to seek injunctive relief and limits the landowner to constitutional compensation. *Cary*, 420 S.W.3d at 517-18. This makes intuitive sense. The main point of similarity between the two cases is the tardiness of the landowners in asserting their rights. In both cases the landowners were aware of the taking as it was happening, and did nothing until years later. In the Carys' case, "they precluded themselves from contesting Pulaski's right to control, possess, and maintain 'Taylor Cemetery Road' as a country road." *Id.* at 519.

Here, the Districts imply that Clarke knew of the taking shortly after it occurred. (Doc. # 45 at 13). They cite no proof for this implication beyond the fact that Clarke's

husband contacted the Districts in 2019 to discuss having some of the lines encased, and at that time the Districts became aware of the easement issue. (*Id.*). The Districts claim that "one suspects that Plaintiff may have held this information to use at a time when it was advantageous to her." (*Id.*).

Perhaps they suspect as much, but the Court will not go that far. Even if Clarke or her husband knew of the violations in 2019 when it came to the Districts' attention, that is not sufficient to bar her request for injunctive relief under *Cary* and *Whitesburg*. She filed suit well within the applicable 5-year statute of limitations and there is no indication that she withheld the information for strategic use. Even if Clarke's husband did request the encasement with the unstated understanding that he and his wife would forego a lawsuit if the Districts provided it, as the Districts allege, that fact does not undermine Clarke's eligibility for an injunction. (Doc. # 45 at 4-5). If anything, it shows that they were actively pursuing their rights. Therefore, the Court finds no evidence to show that Clarke lost her right to request an injunction on timeliness grounds.

**3. Consent by the Landowners**

Finally, the Districts argue that Clarke consented to the deviation from the 2014 easements when her husband (who is a co-trustee) allegedly came to an agreement with the Districts to allow the deviations and signed an amended easement thereafter. (Doc. # 45 at 4). As proof of this, they offer the affidavit of David French, Manager of the Defendant Water District, alleging that he discussed the deviations with Timothy Clarke and he "knew of [the District's] idea." (Doc. # 45-2 ¶ 13; *see also* 45 at 3-4, 13). They also offer a copy of EMB's amended easement, drafted after the Districts and EMB discovered that they needed to deviate from the 2014 easements. (Doc. # 45 at 4). While

it does not appear to be signed, the Districts claim Clarke's signature was "whited out" afterwards. (*Id.*). Only small bits of the original signature are visible near the signature line on the document. (Doc. # 45-5 at 3).

Timothy D. Clarke, Trustee

Sue Ann Clarke, Trustee

Clarke responds with a categorical denial that she or her husband signed the amended easements. (Docs. # 46 at 11; *see* 46-1 at 20; 45-2 at ¶ 15).

Summary judgment is only appropriate when "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247-48. Put another way, if the Districts demonstrate that a reasonable jury could find for them on a disputed material fact, summary judgment will be denied. *See Anderson*, 477 U.S. at 248 ("[I]f the dispute about a material fact is 'genuine,' . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The evidence is viewed in the light most favorable to the Districts. *Matsushita*, 475 U.S. at 587. If there is any "evidence from which reasonably minded jurors might draw an inference" that Clarke signed the amended easement, then summary judgment will be denied. *Anderson*, 477 U.S. at 249.

This certainly appears to be a possibility. The Court notes that a jury could reasonably consider the visible parts of the signature to be consistent with a signature of "Sue Ann Clarke." This is particularly so when compared to the signatures on the

uncontested 2014 easements attached to the Districts' Response.

Sue Ann Clarke 2012 Spousal Trust GST

Timothy D. Clarke, Trustee

Sue Ann Clarke, Trustee

Sue Ann Clarke 2012 Spousal Trust GST

Timothy D. Clarke, Trustee

Sue Ann Clarke, Trustee

(Docs. # 45-3 at 4 and 45-4 at 4).

Even without this particular piece of evidence, the parties have offered contradicting affidavits. The Districts claim that the plans were discussed with Timothy Clarke and that he apparently assented to the deviations. (Docs. # 45 at 4 and 45-2 ¶ 13). Clarke claims that neither she nor her husband signed or agreed to anything. (Doc. # 46 at 11). Whether or not Clarke and her husband assented to the Districts' deviations from the 2014 easements is a material fact in this action.

Therefore, the Court finds that there remains a genuine issue of material fact that precludes summary judgment.

**C. Taxing of Attorney's Fees**

Because Clarke's Motion for Summary Judgment will be denied, it is not necessary to decide whether attorney's fees will be taxed to the Districts. The parties argue stridently over this issue, but largely without citation to relevant authority. (*See* Docs. # 44 at 14; 45 at 14; 46 at 11-12). It is sufficient to note that the single authority Clarke cites does not in fact support her position.

Clarke states that this "Court is vested with inherent authority to award attorney fees." (Doc. # 46 at 11). This is only partly true. It is true this Court has inherent powers,

such as the sanction power, "that are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812). But those powers are carefully circumscribed. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764-65 (1980). The power to award attorneys' fees exists only in cases "when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quotations omitted) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 241, 247 (1975)). Before awarding attorneys' fees, the Court must find that the claims were meritless, that counsel knew or should have known this fact, and "that the claims were pursued for an improper purpose." *Big Yank*, 125 F.3d at 314. The Court sees no evidence to support such findings in this case.

## III. CONCLUSION

Thus, for the reasons articulated herein, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment (Doc. # 44) is **DENIED**;

(2) Plaintiff's Renewed Request for Oral Argument (Doc. # 59) is **DENIED AS MOOT**; and

(3) Defendants **SHALL FILE** an Answer to the Amended Complaint (Doc. # 33) **within twenty (20) days of entry of this Order**; and

(4) This matter is **scheduled** for a telephonic Status Conference on **Friday, April 7, 2023 at 1:30 p.m.** The parties **must dial in to this conference at least five (5) minutes before the scheduled time** by following these steps:

- Call AT&T Teleconferencing at 1-877-336-1839; and
- Enter access code 8854898.

This 21st day of February, 2023.

**Signed By:**

***David L. Bunning*** DB

**United States District Judge**

K:\DATA\ORDERS\Cov2020\20-45 MOO on MSJ.docx