**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 20-45-DLB-EBA**

**SUE ANN CLARKE,**
**as Trustee of the Sue Ann Clarke**                                    **PLAINTIFF**
**2012 Spousal GST Trust**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**WESTERN MASON WATER DISTRICT, et al.**                  **DEFENDANTS**

**\*\*\* \*\*\* \*\*\* \*\*\***

This matter is before the Court upon Plaintiff Sue Ann Clarke's Motion for Reconsideration (Doc. # 62) asking the Court to reevaluate its Memorandum Opinion and Order of February 21, 2023, which denied her Motion for Summary Judgment. (*See* Doc. # 60). Defendants Western Mason Sanitation District and Western Mason Water District (collectively "the Districts") filed a Response (Doc. # 63) and Clarke filed her Reply. (Doc. # 64). On April 13, 2023, the Court heard argument on the motion. (Doc. # 66). Therefore, the Motion is now ripe for review. For the reasons stated herein, Clarke's Motion for Reconsideration (Doc. # 62) is **granted**. The Court's previous Order denying her Motion for Summary Judgment is **vacated in part** (Doc. # 60), and her original Motion for Summary Judgment (Doc. # 44) is **granted**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In early 2014, the Kentucky Transportation Cabinet, in partnership with the Defendant Districts, began a project to widen the Ky 9-AA highway in western Mason County, Kentucky. (Doc. # 60 at 1). As part of this project, their engineers—HMB

Engineering, LLC—obtained easements from the property owners whose land abutted the highway. (*Id*. at 1-2). These easements allowed the Districts to move their water and sewer lines further into the property alongside the widened road. (*Id*.). Sue Ann Clarke is one of those property owners.

As part of these negotiations, Clarke reached an agreement with the Cabinet whereby in exchange for the easement, the Cabinet would pave spurs into her property to facilitate its use later. (*Id*.). Due to a miscommunication, the Cabinet paved these spurs before the Districts moved the water and sewer lines, which were supposed to go underneath the spurs. (*Id*). Once they recognized the problem, the Districts were faced with a choice between routing the lines around the spurs—and therefore outside the easements—or trenching through the spurs to route the lines according to the original plan. (*Id*. at 2). Everyone agrees that the Districts ultimately chose to route the lines around the spurs, but they sharply disagree on the justification.

The Districts claim that they spoke with Timothy Clarke—Plaintiff's husband—and obtained his verbal permission to lay the lines outside the easements. (*Id*.). They also argue that Clarke was presented with an amended easement granting them new rights and may have signed it, but then whited out the signature. (*Id*.). For her part, Clarke denies both arguments outright. (*Id*.).

Clarke filed a Motion for Summary Judgment (Doc. # 44) arguing that she is entitled to the injunction she seeks because the water and sewer lines were clearly laid outside the easements, the Districts admitted this during discovery, and an injunction is an available remedy. (*Id*. at 17). The Districts raised a bevy of responses and defenses, some of them ultimately aborted, which fell mainly into three categories: (1) that Clarke

may not request an injunction in this action and is limited to money damages, (2) that she hasn't alleged damages with sufficient specificity, and (3) that she and her husband acquiesced to the deviation.  (Doc. # 45).

In its February 21, 2023 Order, the Court agreed with Clarke on the availability of her requested remedy, holding that money damages and injunctions are both available remedies under Kentucky's reverse condemnation law, provided she elects one remedy to pursue.  (Doc. # 60 at 10).  But the Court held that a genuine issue of material fact existed as to whether Clarke or her husband assented to the deviations from the original easements.  (*Id*. at 13-15).  Specifically, the Court decided that the Districts raised a credible argument that Clarke at one point signed new easements and later obscured the signatures.  (*Id*.).  The Court also found that the "contradicting affidavits" presented by each side on the issue of Timothy Clarke's purported oral grant of permission to lay the lines on the Clarke property precluded summary judgment.  (*Id*.).

Clarke now asks the Court to reconsider that Order under Federal Rule of Civil Procedure 54(b).  (Doc. # 62).  As grounds for this Motion she argues that it was "clear error" for the Court not to recognize that (1) any oral agreement to modify the easements would have been subject to Kentucky's Statute of Frauds and is therefore unenforceable, (2) that Timothy Clarke does not have any ownership interest in the property and therefore could not convey any rights to the Districts, and finally (3) that Kentucky law presumes that any changes to the signatures were made before delivery and therefore the conveyance was incomplete.  (*Id*. at 2).  The Districts respond that Clarke may not move for reconsideration on the basis of new arguments but also address the arguments themselves on the merits.  (Doc. # 63).  Clarke's Reply asks the Court to rely on its

"significant discretion" to modify its own interlocutory orders.  (Doc. # 64 at 2).

## II.      ANALYSIS

Clarke puts forward three strong arguments that the Court should reconsider its previous Order denying her Motion for Summary Judgment.  Because the Court has broad discretion to modify its own interlocutory orders in the interests of justice, her Motion is **granted**, and the Court will address the merits of the arguments raised.

### A.      The Motion to Reconsider

Although the Federal Rules of Civil Procedure do not specifically contemplate a motion to reconsider an interlocutory order, they recognize the Court's inherent power to "afford such relief from interlocutory orders as justice requires."  *Horn v. City of Covington*, No. CV 14-73-DLB-CJS, 2019 WL 2344773, at *7 (E.D. Ky. June 3, 2019) (quoting *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004)); *see also* Fed. R. Civ. P. 54(b).  The standard for a motion to reconsider under Rule 54(b), while very similar to the standard for a motion for relief from a judgment under Rule 59 or 60, is nonetheless more lenient and affords the district court "greater flexibility." *Horn*, 2019 WL 2344773, at *7 (quotations omitted).  "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Hazard Coal Corp. v. Am. Res. Corp.*, No. 6:20-CV-010-CHB, 2022 WL 18638743, at *3 (E.D. Ky. Sept. 9, 2022) (quotations omitted).

Clarke brings her Motion to Reconsider on the grounds of "clear error." (Doc. # 62-1 at 3).  To show a clear error or manifest injustice, she must show that the Court applied the wrong law to the case or "that there exist[s] a fundamental flaw in the

4

court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Hazard Coal Corp.*, 2022 WL 18638743, at *4 (quotations omitted). In this case, and on these facts, the Court believes that the strength of Clarke's arguments and the interests of justice point toward reconsideration. Accordingly, Clarke's Motion to Reconsider (Doc. # 62) will be **granted**.

### B.      Clarke's Arguments for Reconsideration

The Districts rely on two general theories as to why they were justified in placing their lines on the Clarke property: (1) that Timothy Clarke granted them oral permission, and (2) that Sue Ann Clarke may have signed the new easements and then attempted to hide that fact by obscuring her signature. Clarke's three arguments attempt to counter these defenses. First, she argues that any oral agreement between her husband Timothy Clarke and the Districts is unenforceable under Kentucky's Statute of Frauds. (Doc. # 62-1 at 2). Second, she argues that her husband Timothy Clarke held no interest in the land and therefore could not convey any interest to the Districts. (*Id*.). Finally, she argues that absent evidence to the contrary, Kentucky law presumes that the signature was whited out before the easement was delivered to the Districts, and therefore any purported conveyance failed. (*Id*.).

### 1.      Kentucky's Statute of Frauds

Clarke argues that the alleged oral agreement to allow the Districts to lay their lines outside the easements is unenforceable because despite being a transfer of an interest in land, it was not reduced to a writing as required by the Statute of Frauds. (Doc. # 62-1 at 4). For their part, the Districts contend that the oral agreement was merely a modification of the existing easements which could be modified by a parol agreement.

(Doc. # 63 at 5-6).   In the alternative, they argue that the whited-out easements are a writing sufficient under the Statute.  (*Id.*).

Kentucky's Statute of Frauds states that any agreement transferring an interest in land that is not written and signed by the party to be charged is unenforceable. Ky. Rev. Stat. § 371.010.  Easements are an interest in land, so, as Clarke points out, "oral agreements for the exchange or relocation of easements are within the Statute of Frauds."  *Steinbrenner v. Wilson*, 2007 WL 490981, at *1 (Ky. Ct. App. 2007) (quoting *Jennett v. Sherrill*, 265 S.W. 781, 781 (Ky. 1924)).   Therefore, a purported oral grant of an easement is "merely verbal, and therefore unenforceable under the statute of frauds." *Jennett*, 265 S.W. at 781.  The only exception is that "a contract required to be in writing may be rescinded by parol agreement."  *Murray v. Boyd*, 177 S.W. 468, 471 (Ky. 1915).

Here, the alleged oral grant by Timothy Clarke to the Districts allowing them to place their lines outside the easements is unenforceable because it is an attempt to verbally transfer an interest in land.  This is exactly the kind of transaction which the Statute of Frauds prohibits.  *See* Ky. Rev. Stat. § 371.010.

The Districts contend that any agreement covered by the Statute of Frauds may be modified, abrogated, or rescinded by parol agreement.  (Doc. # 64 at 3).  However, the cases uncovered during the Court's research do not support this proposition, despite this categorical language.   While contracts under the Statute may be abrogated or rescinded by parol agreement, it is not clear they can be materially modified by parol agreement. This confusion stems from *Hicks v. Oak's Administrator*, a case cited by the Districts, which states categorically that "a contract, although required by the statue of frauds to be in writing, may be modified, abrogated, or rescinded by a parol agreement."

24 S.W.2d 917, 921 (Ky. 1930).  But all the cases cited for this "well settled" proposition only apply to abrogation or rescinding of a contract.  *See id*.  Other than this bare, unsupported assertion, there is no authority for the proposition that an easement may be materially modified by parol agreement.  Indeed, such a conclusion would effectively gut the Statute of Frauds and caselaw refusing to enforce verbal conveyances.

The Districts also argue that the whited-out easement discussed below satisfies the Statute because it is a post hoc memorial of the parties' oral agreement. (Doc. # 63 at 5-6).  But as will be seen, this argument fails because the writing itself fails under Kentucky law.  (*See infra*, Part II.B.3).  A faulty document cannot satisfy the Statute of Frauds.

Clarke's argument is well taken, and the Court finds that any alleged oral agreement between Timothy Clarke and the Districts is unenforceable because of the Statute of Frauds.

### 2.    *Timothy Clarke's Interest in the Property*

Next, Clarke makes the very simple and straightforward argument that her husband Timothy Clarke held no interest in the property at issue, and he therefore could not convey any interest to the Districts, whether orally or in writing.  (Doc. # 62-1 at 4-5). Clarke is correct.  It is an elementary principle of property law that one cannot convey an interest greater than what he enjoys.  *See, e.g.*, Ky. Rev. Stat. § 381.150.  Clarke points out that she alleged in her complaint that she—and only she—owned the subject property. (Docs. # 62-1 at 5 and 1 ¶ 8).   The Districts admit that allegation. (Doc. # 12 ¶ 6).

But this question is moot because, as discussed above, any agreement that Timothy Clarke may have brokered with the Districts would fail under the Statute of Frauds. Examining whether Timothy Clarke had the power in the first place to enter an agreement with the Districts is unnecessary. The Court will set this argument aside.

### 3.    Kentucky's Presumption Regarding Alteration

Finally, Clarke turns to the Districts' second theory and argues that Kentucky law would not enforce the allegedly whited-out easement as valid, even if the Districts can prove that it was in fact signed. Specifically, she states that Kentucky law presumes that any change to the signature on an easement was made before delivery, and therefore the instrument did not transfer any interest in the land. (Docs. # 62-1 at 5-6 and 64 at 4-6). The Districts do not directly address the argument, but instead mischaracterize the Court's previous Memorandum Opinion and Order denying Clarke's Motion for Summary Judgment, stating that the Court found a genuine issue of material fact over "whether the easement was delivered and accepted by Plaintiff/Trustees." (Doc. # 63 at 3).

Clarke correctly states Kentucky law. For the transfer of an interest in land to be valid, the instrument transferring title must be signed, delivered, and accepted. *Smith v. Vest*, 265 S.W.3d 246, 250 (Ky. Ct. App. 2007). In Kentucky, where changes or alterations are made to a written instrument, there is a presumption that the changes were made before delivery. *Eversole v. Kentucky River Coal Corp.*, 225 S.W. 50, 52 (Ky. 1920). This is because the instrument becomes effective upon delivery and acceptance, and alteration of the deed after it becomes effective would constitute fraud. As the Kentucky Court of Appeals held in 1967:

> The common law rule [is] that an alteration appearing upon a deed should
> be presumed to have been made before delivery, in the absence of any

8

> evidence to the contrary. This doctrine [is] based upon the principle that a
> deed cannot be altered after it is executed, without fraud or wrong, and the
> presumption is against fraud or wrong.

*Whayne v. Webb*, 418 S.W.2d 748, 749 (Ky. 1967).  Later cases reinforce this rule.

Additionally, under this presumption, "the party producing the paper has the burden of

proving the change was made under circumstances which render it lawful or which do not

preclude recovery." *Damron v. Damron*, 192 S.W.2d 741, 744-45 (Ky. 1945).  Therefore,

the burden is on the Districts to show that they received a copy of the easement without

the signatures whited out—in other words that the delivery was effective.  During the

telephonic conference, the Districts admitted they cannot produce that document.

The Districts cite several authorities in support of a general rebuttal of the

presumption, but all of the provided authorities actually reinforce it.  First, they claim that

this Court's Memorandum Opinion and Order denying Clarke's Motion for Summary

Judgment (Doc. # 60) found a genuine issue of material fact over whether the whited-out

easement was delivered.  (Doc. # 63 at 3).  That is incorrect.  As Clarke points out, the

Court's Order found a genuine issue of material fact over whether she *actually signed* the

new easement, stating that "a jury could reasonably consider the visible parts of the

signature to be consistent with a signature of 'Sue Ann Clarke.'" (Doc. # 60 at 14).

The Districts then build on this argument by citing several cases.  They begin by

claiming that *Slater v. Hatfield* stands for the proposition that "[a]n erased signature of the

grantors does not void or invalidate the deed."  242 S.W. 618, 622 (Ky. 1922).  That is

correct, and also irrelevant, because in that case the signature was clearly erased after

delivery.  *Id*.  This is a presumption, after all, not a rule, and there the parties produced

sufficient evidence to show that the signature was removed after the deed became

9

effective.  *Id*.  The Districts also claim that *Million v. Johnson* holds that the destruction of a deed after delivery is insufficient to "reinvest the title in the grantor."  (Doc. # 63 at 4) (citing *Million v. Johnson*, 242 S.W. 14, 16 (Ky. 1922)).  This is also true but not germane, because as discussed below, the deed was never delivered.  Finally, they claim that the court's consideration of witness testimony in *Eversole v. Kentucky River Coal Corporation* means that they should be able to put forward evidence of whether Clarke signed the easement.  225 S.W. at 51.  But they have already done so in the previous Motion, and the Court found a genuine issue of material fact as to that question.  *Eversole* is itself an application of the presumption with exacting carefulness, finding that the presumption was overcome by the attestation of the county clerk who recorded the deed.  *Id*. at 52. The original unredacted easement is the first piece of proof the Districts should offer to prove that they received a valid easement, thereby fulfilling the requirement for delivery and acceptance under Kentucky. They cannot do so.

During the April 13 telephonic conference, the Districts argued that the delivery requirement was satisfied when they sent the draft easement to Clarke for her signature. Once she signed it, they argue, it was effective.  In other words, delivery may be from the grantee to the grantor.  But this is exactly backwards.  "The delivery of the deed is the act by which the grantor divests himself, and the acceptance of it is the act by which the vendee vests himself with title to the property."  *Vest*, 265 S.W.3d at 251 (quoting *Hardin v. Kazee*, 38 S.W.2d 438, 440 (Ky. 1931)).  In fact, addressing a very similar fact pattern, the court in *Hardin v. Kazee* stated that "a deed will not be regarded as delivered while anything remains to be done by the parties who propose to deliver it, as where it is delivered on condition that it shall not become effective until executed by all the grantors,

10

and it is never so executed."  38 S.W.2d at 440.  For the delivery requirement to be fulfilled, "it is essential that there be a giving by the grantor and a receiving by the grantee." *Id*.

Applying Kentucky's presumption in this case, the Court holds that the signatures on the whited-out easements—if they are in fact signatures—were obscured before the documents were delivered to the Districts.  Because a validly signed easement was never delivered to the Districts, they had no right to place their lines where they did on the Clarke property.

## III.   CONCLUSION

Thus, for the reasons articulated herein, **IT IS ORDERED** that:

(1)   Plaintiff's Motion for Reconsideration (Doc. # 62) is **GRANTED**;

(2)   The Court's Memorandum Opinion and Order denying Plaintiff's Motion for Summary Judgment (Doc. # 60) is **VACATED IN PART** insofar as it denies the Plaintiff's Motion;

(3)   Plaintiff's Motion for Summary Judgment (Doc. # 44) is **GRANTED**;

(4)   Judgment **shall be filed** contemporaneously herewith;

(5)   Defendants **shall relocate** their water and sewer lines consistent with the 2014 easements, at Defendants' expense; and

(6)   This matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

This 18th day of April, 2023.



**Signed By:**

*David L. Bunning*   DB

**United States District Judge**

J:\DATA\ORDERS\Cov2020\20-45 Order on Reconsideration.docx